## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Barbara Buckley, f/k/a Barbara Reeves,

                    Plaintiff,               **MEMORANDUM OPINION**
                                          **AND ORDER**
        v.                             Civil No. 06-1000 ADM/JSM

HealthPartners, Inc.,

                    Defendant.

---

Ruth Y. Ostrom, Esq. and Mark A. Greenman, Esq., Greenman & Ostrom, Minneapolis, MN, on behalf of Plaintiff.

Cynthia A. Bremer, Esq., Fulbright & Jaworski L.L.P., Minneapolis, MN, and Kelly A. Moffitt, Esq., Flynn, Gaskins & Bennett, L.L.P., Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On April 20, 2007, oral argument before the undersigned United States District Judge was heard on Defendant HealthPartners, Inc.'s ("HealthPartners") Motion for Summary Judgment [Docket No. 17]. In her Amended Complaint [Docket No. 2], Plaintiff Barbara Buckley, formerly known as Barbara Reeves ("Buckley"), asserts a claim for violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1). HealthPartners' Motion is granted.

## II. BACKGROUND

### A.     Parties and Relevant HealthPartners' Employees

Barbara Renee Buckley was employed as a licensed practical nurse ("LPN") by HealthPartners in its Como clinic in St. Paul from November 4, 2002 to August 1, 2005. Buckley Dep. (Moffitt Decl. [Docket No. 20] Ex. A) at 9-10, 22, 28, 92; Buckley Decl. [Docket No. 25] ¶ 2; Lander Decl. [Docket No. 27] Ex. H at 2. Prior to her full time employment with

HealthPartners, Buckley worked at HealthPartners for two years through Allied Professionals, a temporary agency.  Buckley Dep. at 18; Buckley Decl. ¶ 2.  Buckley worked 32 hours per week at HealthPartners and was paid approximately $19.00 per hour.  Buckley Dep. at 39.

In 1983, Buckley was in a car accident and suffered serious injuries to her cervical spine. Buckley Decl. ¶ 3.  As a result of the accident, Buckley experiences back pain and migraine headaches that persist to the present.  Id. ¶¶ 3-4.  In 1999, Buckley had surgery to fuse her cervical spine, but the surgery has not entirely relieved her pain symptoms.  Id. ¶ 4.  Buckley has been prescribed a variety of medications over the years to treat chronic pain, bronchitis, migraines, and other ailments.  See Walker Dep. (Moffitt Decl. Ex. E) Ex. 1; Buckley Decl. ¶¶ 5-6.

Emily Smith ("Smith") has worked at HealthPartners since November 2000.  Smith Dep. (Moffitt Decl. Ex. C) at 6-7.  On January 5, 2004, Smith became Assistant Care Delivery Supervisor ("ACDS") at the Como clinic.  Id. at 10, 19.  As an ACDS, Smith supervised all of the LPNs, registered nurses ("RN"), and Certified Medical Assistants ("CMA") in adult medicine and pediatrics.  Id. at 11, 13.  Janet Dorfman ("Dorfman") has worked for HealthPartners for eighteen years and is a Care Delivery Supervisor ("CDS").  Dorfman Dep. (Moffitt Decl. Ex. B) at 6.  Dorfman is Smith's supervisor.  Smith Dep. at 11.  Sue Nelson ("Nelson") is the Lead Nurse at Como clinic.  Buckley Dep. at 112; Lander Decl. Ex. H at 21. As Lead Nurse, Nelson is not a supervisor, but is responsible for scheduling the other nurses, including Buckley.  Dorfman Dep. at 10.  Jodi Lange ("Lange") has worked for HealthPartners for thirteen years and is a business systems supervisor.  Lange Dep. (Moffitt Decl. Ex. D) at 5. Lange supervises clerical staff and oversees the revenue cycle for the Como clinic.  Id. at 5, 7.

Lori Babin ("Babin") is employed by HealthPartners as a nurse at the Como clinic and is also a union steward. Babin Aff. [Docket No. 26] ¶ 1. Benny Walker ("Walker") has been a physician's assistant at HealthPartners' Como clinic for thirteen years. Walker Dep. at 6-7. Walker began treating Buckley in May 2003. Id. at 9; Lander Decl. Ex. H at 28.

**B.     Union**

The Collective Bargaining Agreement ("CBA") between HealthPartners and the Health Care Union includes a section on discipline and discharge. Article 33, section 1 of the CBA states "Disciplinary action may be imposed upon an Employee only for just cause and shall be progressive, where appropriate. The parties recognize that serious offenses may require the imposition of more severe discipline as an initial action." Smith Decl. [Docket No. 21] Ex. A. Article 33, Section 6 provides:

> Disciplinary action shall include only the following:
>
> 1.     Oral Reprimand.
> 2.     Written Reprimand.
> 3.     Suspension (not to exceed 15 working days).
> 4.     Discharge.
>
> These disciplinary actions do not have to be imposed in the order listed above and the same level of discipline may be imposed more than once before progressing to a higher level of discipline.

**C.     FMLA Applications**

While employed at HealthPartners, Buckley submitted at least three FMLA applications. Buckley Dep. at 89. On December 30, 2003, Buckley submitted a FMLA application, requesting intermittent leave for chronic bronchitis. Id. Ex. 7. HealthPartners granted Buckley's FMLA request. Id. at 93. On November 18, 2004, Buckley submitted two FMLA applications, one requesting intermittent leave for chronic bronchitis and one requesting intermittent leave for

3

cervicalgia and migraine headaches.  Id. at 93, Ex. 8.  Buckley understood that she had to submit

annually her FMLA application for intermittent leave due to chronic bronchitis, cervicalgia, and

migraine headaches.  Id. at 94.  HealthPartners again granted Buckley's leave requests.  Id.  On

July 14, 2005, Buckley submitted a FMLA application requesting leave from July 18, 2005, to

July 31, 2005, for acute adjustment reaction[1] and anxiety.  Id. Ex. 9.  HealthPartners also granted

the July 14, 2005, FMLA request.  Id. at 95; Dorfman Dep. at 64.

**D.    Discipline**

      **1.    July 6, 2004 Verbal Reprimand**

      Although Buckley usually did not work on Mondays, in May 2004, Nelson asked

Buckley to switch a couple of Wednesday shifts to Monday shifts, and Buckley agreed.

Dorfman Dep. at 18-19, Ex. 1.  On Monday, June 14, 2004, and Monday, June 21, 2004,

Buckley failed to report to work.  Id. Ex. 1; Buckley Dep. Ex. 10 at 000029.  At the time,

Buckley claimed that she neglected to mark the two days on her calendar and forgot about them.

Buckley Dep. Ex. 10 at 000029; Dorfman Dep. Exs. 1, 2.  On July 6, 2004, Buckley received a

verbal reprimand for failing to report to work on June 14 and June 21.  Buckley Dep. Ex. 10 at

000029.

---

[1] Walker testified that acute adjustment reaction referred to Buckley's exacerbated
stressors and her psychological response to those stressors.  Walker Dep. at 53.  Walker testified
that Buckley believed the condition commenced before July 14, 2005, but Walker did not
diagnose the condition until July 14.  Id. at 55-56.

**2.**          **September 10, 2004 Coaching**[2]

On September 10, 2004, Buckley was coached on appropriate interaction with patients. Id. at 146-47, Ex. 10 at 000027.  A patient complained that Buckley called her "hon."  Id. at 147. Buckley claims that the patient was very angry that she had to wait to see her doctor, and that Buckley said, "I understand you're upset, hon."  Id.  Buckley avers that she did not use the word "hon" in a derogatory manner but agrees with HealthPartners' coaching of her on that occasion. Id. at 148.

**3.**          **October 19, 2004 Coaching**

On October 19, 2004, Buckley received a coaching on the use of her allotted rest periods. Id. at 145, Ex. 10 at 000027.  Buckley was coached by Smith not to go on break at the same time as other nurses.  Id. at 145-46.  Buckley disagrees with the October 19 coaching because she claims that at the time, Smith told her that she was not being coached but rather just being told not to let other nurses follow her on her breaks.  Id.

**4.**          **November 4, 2004 Written Reprimand**

On Saturday, October 30, 2004, Buckley failed to report to work at the walk-in flu clinic, and as a result, received a written reprimand on November 4, 2004.  Id. Ex. 10 at 000031; Dorfman Dep. Ex. 4.  At the time, Buckley admitted that she forgot she was assigned to work on that day.  Buckley Dep. Ex. 10 at 000031; Dorfman Dep. Ex. 4.  At her deposition, Buckley testified that she was scheduled to work two Saturdays at a flu clinic, but that Nelson had told her the clinic was cancelled because not enough people had signed up.  Buckley Dep. at 107,

---

[2] A job coaching is a verbal conversation between a supervisor and an employee in which the supervisor addresses a particular performance problem of the employee.  Smith Decl. ¶ 3.  A coaching is often later memorialized in writing.  Id.

114.  Buckley further testified that Nelson sometimes lied about scheduling to make herself look better.  Id. at 114.

### 5.      June 22, 2005 Suspension

On June 1, 2005, a patient complained to Dorfman that Buckley improperly placed the sticky end of a band-aid on the exam table before Buckley placed the band-aid on the patient's arm, and that Buckley stuck the pointed end of a syringe needle into the padding of the exam table rather than disposing of it properly.  Id. at 139, 142-43; Dorfman Dep. at 40, 50-51, Exs. 8, 9.  Smith conducted an investigation, and determined that Buckley had committed the acts complained of by the patient.  Buckley Dep. Ex. 10 at 000027.  On June 22, 2005, Buckley received a two day suspension without pay for failing to follow proper nursing procedure.  Id. Buckley agrees that she improperly handled the band-aid but disputes that she stuck a used needle into the padding of the exam table.  Id. at 140-41.  Smith examined the padding of the exam table after the patient complaint and discovered small puncture marks.  Smith Decl. ¶ 4. Buckley claims that the puncture marks were made by a small child using a ballpoint pen. Buckley Dep. at 139-40.  Smith claims that Buckley never offered this explanation to her at the time of the incident.  Smith Decl. ¶ 4.

### 6.      June 28, 2005 Coaching

On June 21, 2005, Buckley was scheduled to work at the Arden Hills clinic.  Dorfman Dep. at 29, Ex. 3.  Instead of reporting for work at the Arden Hills clinic, Buckley went to the Como clinic, and was twenty minutes late to work.  Id. at 29-30, Ex. 3.  On June 28, 2005, Buckley was coached for failing to report to work on time at the correct clinic.  Id. Ex. 3. Buckley told her supervisors that she forgot she was scheduled to work at the Arden Hills clinic.

Id. at 30, Ex. 3.  Buckley was coached about the need to carefully check her schedule in the future.  Id. Ex. 3.

### 7.    July 5, 2005 Coaching

HealthPartners' sick call policy requires an employee to call in to report that she will miss work because she is sick.  Buckley Dep. at 123.  If the employee calls prior to 7:00 a.m., she leaves a recorded message on the sick call voicemail box.  Id. at 106, 123; Smith Decl. Ex. B.  If the employee calls after 7:00 a.m., she is required to speak directly with a supervisor. Buckley Dep. at 106, 123.  Buckley called in sick with migraine headaches on June 8, 29, and 30, 2005.  Smith Dep. at 59, Ex. 7.  On all three occasions, Buckley failed to call and leave a message on the sick line before 7:00 a.m. and instead called her lead nurse after 7:00 a.m.  Id. Ex. 60, 7.  On July 5, 2005, Buckley was coached on the sick call policy.  Buckley stated to Smith, "Oh, I thought if it was after 7:00 that I should call Sue.  Sometimes I try to take my meds to see if it will help."  Id.  Buckley was coached to always call the sick line before 7:00 a.m. if she could not come in for her scheduled shift.  Id. Ex. 7.

### 8.    August 1, 2005 Termination

From July 8-14, 2005, Buckley was scheduled to be away from work on vacation. Buckley Dep. Ex. 15.  Buckley had bid for her July vacation time months in advance.  Id. at 124-27; Smith Decl. Exs. C, D.  On July 11, Smith realized that Buckley had not accumulated sufficient vacation hours to be on vacation until July 14.  Buckley Dep. Ex. 15; Smith Dep. at 46; Dorfman Dep. at 53.  Smith called Buckley at home and told her that she would need to report to work on July 13 at 1:00 p.m.  Buckley Dep. Ex. 15; Smith Dep. at 46-47; Dorfman Dep. at 53. Buckley did not return to work on July 13 and did not call in.  Buckley Dep. at 128-29; Smith

Dep. at 51; Dorfman Dep. at 53.  Buckley claims that due to drug interactions from the many medications she was taking, she forgot that she was supposed to return to work on July 13. Buckley Dep. at 130; Buckley Decl. ¶¶ 7, 9.  Buckley has testified that at about 6:00 p.m. on July 13, she checked her calendar and realized she had been scheduled to work at 1:00 p.m. that day. Buckley Dep. at 120.

On July 14, 2005, Smith, Babin, and Lange met with Buckley to discuss her absence.[3] Smith Dep. Ex. 5; Lange Dep. at 11; Babin Aff. ¶ 2.  Babin and Lange functioned as note-takers. Lange Dep. at 21.  At the meeting, Buckley told Smith that she was absent because she forgot what day it was.  Smith Dep. Ex. 5.  According to notes of the meeting, Buckley stated: "I would like you to know that I am talking to my doctor.  I told him what's happening.  He is willing to write a letter."  Id.  Buckley claims that she specifically told Smith that she was having memory problems due to medications.  Buckley Decl. ¶ 10.  Smith claims that she does not recall Buckley saying anything about her absence being related to a medical condition or anything about medication changes.  Smith Dep. at 48, 64-67; Lander Decl. Ex. H at 8.  Babin recalls Buckley telling Smith "that she was having difficulty and needed medication changes and stated that she was discussing it with her provider and would get a letter if needed."  Babin Decl. ¶ 3.

After the investigation meeting on July 14, Buckley met with Walker.  Walker Dep. Ex. 3.  Her primary concern presented to Walker during the visit was her memory loss.  Id. at 42.

---

[3] The meeting was an investigative meeting.  An investigative meeting usually includes the employee, her supervisor, and two note-takers: a member of the employee's union, and another clinic supervisor.  Lange Dep. at 8.  The purpose of the meeting is for the supervisor and the employee to discuss an event and to collect information.  Id.  Lange testified that she tried to record in her notes everything that transpired at the meeting, but that people spoke at normal speaking speeds, and she is not trained in taking dictation.  Id. at 14-16.

Buckley reported to Walker that she felt like she was losing it, that she was disoriented and could not remember things, and that she had been having memory loss over the past one to two months.  Id. at 42, Ex. 3.  Buckley also reported to Walker that "on Wednesday she was [due in] work at 1300 and did not think about this until she was approached by her son['s] father later that evening, relating her back to the point that she should have been at work on Wednesday." Id. at 43, Ex. 3.  Walker also recommended that Buckley take FMLA separation from work for a short time so that she could "gather herself due to her family dynamics" and "focus on herself and her son."  Id. Ex. 3.

As previously stated, on July 14, 2005, Buckley submitted a FMLA application requesting leave from July 18, 2005, to July 31, 2005, for acute adjustment reaction and anxiety, which was subsequently granted.  Buckley Dep. Ex. 9.  Buckley claims that she requested the FMLA forms from Dorfman, and told Dorfman that she was having memory problems because of her medications.  Buckley Decl. ¶ 11.  Dorfman does not recall having any specific discussion about why Buckley was requesting the FMLA forms.  Dorfman Dep. at 58-60.  On August 1, 2005, Buckley was terminated for not showing up to work and not calling in sick on July 13, 2005.  Buckley Dep. at 136, Ex. 10 at 000041.  Smith made the decision to terminate Buckley for her no call/no show on July 13.  Smith Dep. at 74; Dorfman Dep. at 54.  Smith avers that it was the final step after a history of discipline problems.  Smith Dep. at 74.

**E.      Union Grievances and Unemployment Compensation**

While employed at HealthPartners, Buckley was a member of a health care union. Buckley filed grievances with the union regarding both her suspension for the band-aid and syringe incident, and her termination for the July 13 no call/no show.  Id. at 97; Dorfman Dep. at

39.  On August 12, 2005, a grievance meeting was held with Dorfman, Smith, and Babin.
Dorfman Dep. Ex. 5.  At the meeting, Babin argued that Buckley had been experiencing memory
lapses and trouble concentrating for several months.  Id.  Smith argued that none of Buckley's
co-workers or provider had come forward with any concerns about Buckley's memory and that
Smith had not ever had a discussion with Buckley about medication or memory loss.  Id.
Dorfman testified that the grievance meeting was the first time that a memory problem had been
proffered as the reason Buckley was having difficulty at work.  Id. at 43.  HealthPartners denied
Buckley's grievances.  Id. at 46-48, Exs. 6,7.  The union ultimately ceased to pursue her
grievances on November 22, 2005, and Buckley did not appeal the decision.  Buckley Dep. at
98-100, Exs. 10 at 000047, 14.

　　　　After her termination, Buckley applied for unemployment compensation, but her request
was denied.  Id. at 100.  Buckley appealed the decision, and the denial was upheld.  Id. at 101;
Lander Decl. Ex. H.

**F.　　Job Applications and Health Insurance**

　　　　Buckley did not start looking for work after her termination from HealthPartners until
October 2005.  Buckley Dep. at 28.  Buckley avers that she did not look for a job in August or
September because she was too devastated by her termination.  Id.  Buckley did not apply for
any jobs in October and applied for two jobs in November 2005, including one with her former
employer, Allied Professionals.  Id. at 30-34.  Buckley was hired by Allied and her starting
salary was $20.00 per hour.  Id. at 38.  Buckley's rate of pay with Allied varies from $20 per
hour to $23 per hour, depending on where she is assigned to work.  Id. at 50-59.  At first,
Buckley worked 24 hours per week, but now works as much as 40 hours per week.  Id. at 39-40,

Ex. 3. Buckley qualifies for vacation benefits at Allied but does not qualify for any other

benefits. Id. at 48, 74-75. Buckley does not currently have health insurance because she does

not work sufficient hours at Allied to qualify and she has not otherwise applied for benefits. Id.

at 13-16, 24.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion

for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995).

**B.      FMLA**

The FMLA was enacted in part "to entitle employees to take reasonable leave for medical

reasons." 29 U.S.C. § 2601(b)(2). In general, "an eligible employee shall be entitled to a total of

12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition

that makes the employee unable to perform the functions of the position of such employee." 29

U.S.C. § 2612(a)(1)(D).  Employees are required to give employers notice of their need for

leave.  <u>See</u> 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302, 303.

> When the approximate timing of the need for leave is not foreseeable, an employee
> should give notice to the employer of the need for FMLA leave as soon as practicable
> under the facts and circumstances of the particular case.  It is expected that an employee
> will give notice to the employer within no more than one or two working days of learning
> of the need for leave, except in extraordinary circumstances where such notice is not
> feasible.

29 C.F.R. § 825.303(a).  It is "unlawful for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any rights provided under this subchapter."  29 U.S.C. §

2615(a)(1).  It is also "unlawful for any employer to discharge or in any other manner

discriminate against any individual for opposing any practice made unlawful by this subchapter."

29 U.S.C. § 2615(a)(2).

     Buckley and HealthPartners disagree over whether Buckley has asserted an (a)(1)

interference claim or an (a)(2) discrimination claim.  The dispute is important because the nature

of the claim affects the analysis applied by the Court.  <u>Dillaway v. Ferrante</u>, Civ. No. 02-715

(JRT/JSM), 2003 WL 23109696, at *4 (D. Minn. Dec. 9, 2003).  "The difference between the

two claims is that the interference claim merely requires proof that the employer denied the

employee [her] entitlements under the FMLA, while the retaliation claim requires proof of

retaliatory intent."  <u>Stallings v. Hussman Corp.</u>, 447 F.3d 1041, 1051 (8th Cir. 2006).  In her

Amended Complaint, Buckley alleges "Defendant violated the FMLA by using FMLA-protected

absences as a basis for plaintiff's termination.  Alternatively, defendant violated the FMLA by

terminating plaintiff in retaliation for exercising her rights under the FMLA."  Am. Compl. ¶¶

34-35.  Buckley expressly argues that her FMLA claim should be considered as an interference

claim and not a discrimination/retaliation claim.  Buckley argues in support of her "interference"

theory and against a "discrimination/retaliation" theory that she "was entitled to FMLA leave on

July 13, 2005, and her termination because of her absence from work that day denied her the

benefits to which she was entitled under the FMLA." Pl.'s Opp'n Mem. [Docket No. 23] at 17.

Although Buckley's fact pattern fits better within the rubric of discrimination/retaliation, the

Court recognizes that "the lines between the two categories are not hard and fast." Stallings, 447

F.3d at 1051. Accordingly, viewing the record in the light most favorable to Buckley, the Court

will honor Buckley's request to treat her claim as one for interference under 29 U.S.C. §

2615(a)(1).[4] Also, any claim for discrimination/retaliation is waived.[5] See Dillaway, 2003 WL

23109696, at *5.

Despite Buckley's myriad arguments in support of her interference claim, she simply has

no evidence that HealthPartners interfered with her rights under the FMLA. Smith called

Buckley on July 11, 2005 to inform her that she had not accumulated vacation time to remain out

_____

[4] The Court's job of construing Buckley's claim would have been greatly aided if Buckley had simply referred to her claim as an "interference" claim or an "(a)(1)" claim. See Stallings, 447 F.3d at 1050 ("Two types of claims exist under the FMLA: (1) 'interference' or '(a)(1)' claims . . . and (2) 'retaliation' or '(a)(2)' claims . . . ."). In the future, Buckley should identify the nature of her claim.

[5] Because Buckley's claim is construed as one for interference rather than discrimination/retaliation, the Court need not address HealthPartners' McDonnell Douglas arguments. However, it appears that if construed as a discrimination/retaliation claim, Buckley's FMLA claim would fail. Buckley can not establish a *prima facie* case of discrimination/retaliation because other than temporal proximity, she can not show that there was a causal connection between her FMLA leave and her termination. See Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502-03 (8th Cir. 2005); Smith v. Allen Health Systems, Inc., 302 F.3d 827, 832-33 (8th Cir. 2002). Even if Buckley could establish a *prima facie* case, HealthPartners has proffered Buckley's July 13 no call/no show after a long history of discipline as a legitimate, nondiscriminatory reason for terminating Buckley, and Buckley has insufficient evidence that HealthPartners' legitimate, nondiscriminatory reason is pretextual. See Smith, 302 F.3d at 833-34; Bailey v. Amsted Indus. Inc., 172 F.3d 1041, 1045 (8th Cir. 1999).

of work through July 14, and Buckley would have to return to work on July 13 at 1:00 p.m.
Smith Dep. at 46-47.  Buckley did not return to work on July 13 and did not call to explain her
absence.  Buckley Dep. at 128-29.  Buckley's July 13 absence occurred after other instances of
not reporting to work, being rude to a patient, and using improper nursing procedure.  Buckley
Dep. Ex. 10 at 000041.  Buckley had experienced progressive discipline up to and including
suspension, and had been informed that further misbehavior could result in her termination.  Id.
On July 14, when Buckley returned to work, an investigative meeting was held to discuss
Buckley's absence, at which Buckley explained that she "forgot" to come to work.  According to
notes from the meeting, Buckley stated "I would like you to know that I am talking to my doctor.
I told him what's happening.  He is willing to write a letter."  Smith Dep. Ex. 5.  Buckley claims
that she specifically told Smith that she was having memory problems due to medications, and
Babin claims that Buckley specifically mentioned needing medication changes.  Buckley Decl. ¶
10; Babin Decl. ¶ 3.  Even if Buckley and Babin's recall of the meeting is accurate, it did not
provide HealthPartners adequate notice that Buckley was in need of FMLA leave.  It is true that
"an employee need not invoke the FMLA by name in order to put an employer on notice that the
Act may have relevance to the employee's absence from work."  Spangler v. Fed. Home Loan
Bank of Des Moines, 278 F.3d 847, 852 (8th Cir. 2002).  "Under the FMLA, the employer's
duties are triggered when the employee provides enough information to put the employer on
notice that the employee may be in need of FMLA leave."  Id.  However, Buckley did not
provide HealthPartners with enough information to notify her employer that she was in need of
FMLA leave.

Buckley cites to her FMLA leave from July 18-31, her absence on July 13 as the impetus

for her leave request for July 18-31, and her approved intermittent FMLA leave in November

2004 for migraines and cervicalgia, as evidence that she gave her employer proper notice of her

need for FMLA leave.  Buckley argues that HealthPartners had ample notice that her qualifying

condition for FMLA leave as of July 18 might also be the reason for her absence on July 13.

However, Buckley's statements at the investigative meeting on July 14 as reflected in the notes

gave HealthPartners no notice that Buckley needed leave related to issues with migraines or

cervicalgia, and indeed, Buckley's FMLA leave from July 18-31 cites acute adjustment reaction

and anxiety.  Also, when Buckley submitted her FMLA paperwork, which she and Walker filled

out together, she specifically requested leave from July 18-31, and made no mention of need for

her absence on the 13th to be covered by FMLA.  Given her past history of migraines,

bronchitis, and cervicalgia, Buckley's statements that she was "talking to her doctor and could

get a letter" or even that she was having "memory problems due to medications" does not put

HealthPartners on notice that Buckley needed FMLA leave.

Buckley relies heavily on Shtab v. The Greate Bay Hotel and Casino, Inc., 173 F. Supp.

2d 255 (D.N.J. 2001) as support that HealthPartners should have known that Buckley's July 18-

31 FMLA request was meant to cover the 13th, and HealthPartners should have notified Buckley

of deficiencies in her medical certification form so that she could have an opportunity to cure

them.  However, Shtab is distinguishable from the instant case.  In Shtab, the plaintiff

specifically informed his employer on May 22 that he would need FMLA leave beginning May

23, and filled out an FMLA application requesting leave to begin on May 23.  Shtab, 173 F.

Supp. 2d at 259.  The plaintiff's doctor later completed a medical certification, requesting

intermittent leave beginning May 28, and the plaintiff was subsequently fired for missing work

15

from May 23-27.  Id.

In this case, Buckley noted on her application that she was "unsure" as to what date she

needed her leave to begin, and Walker specifically requested 7/18/05-7/31/05 on the medical

certification form.  Buckley Dep. Ex. 9.  Walker also notes that Buckley's conditions of acute

adjustment reaction and anxiety commenced on 7/14/05 with "symptoms ongoing," and that her

period of incapacity began 7/18/05 and would last approximately two weeks.  Id.  From

HealthPartners' perspective, Buckley's application was "complete," meaning there were no

blanks or unanswered questions on the application that would alert HealthPartners that

Buckley's application was deficient.  Unlike Shtab, HealthPartners was not aware that Buckley

intended for her FMLA application to cover the 13th because Buckley never informed either

Smith or Dorfman that the 13th was at issue, and the face of Buckley's application and

certification does not give rise to the conclusion that the 13th should also be covered.

Buckley's testimony and medical records are also insufficient to create a genuine issue of

material fact.  Although Buckley claims that she specifically told Smith and Dorfman that she

was having memory problems due to medications, Smith and Dorfman recall Buckley stating no

such thing, and Babin, Buckley's union representative, recalls Buckley only telling Smith "that

she was having difficulty and needed medication changes and . . . was discussing it with her

provider and would get a letter if needed."  Buckley Decl. ¶ 10; Smith Dep. at 48; 64-67; Lander

Decl. Ex. H at 8; Babin Decl. ¶ 3.  Even if Buckley did tell Smith at the investigative meeting,

and Dorfman when she was requesting FMLA paperwork, that she was having memory problems

and needed medication adjustments, her subsequent FMLA request was for leave from July 18-

31 for acute adjustment reaction and anxiety.  HealthPartners had no basis to conclude that

16

Buckley's absence on the 13th, originally submitted as vacation time, and FMLA leave on July 18-31 were related. Although Walker's July 14, 2005, medical record for Buckley reflects Buckley's concern about memory loss and its relation to her absence from work on the 13th, this document was not produced until after the instant litigation began.

Buckley argues that HealthPartners also interfered with her FMLA rights by taking into consideration the times that Buckley did not call in before 7:00 a.m. to report that she would miss work due to migraine headaches. This argument is also unavailing. Instead of utilizing the next level of discipline in the progressive discipline policy in response to Buckley's improper use of the sick call policy, Buckley was "coached" on the proper use of the sick call policy so that she could use it correctly in the future. Smith Dep. Ex. 7. HealthPartners' coaching of Buckley on the sick call policy did not interfere with Buckley's FMLA leave.

Buckley also argues that her absence on July 13, 2005, was protected by her November 2004 FMLA leave request for cervicalgia and migraine headaches. Buckley argues that she was absent on the 13th due to memory loss caused by side effects of the medications that she was taking to treat her cervicalgia and migraine headaches. This argument is too attenuated and unconvincing. Although it may be that Buckley experienced memory loss due to medications that she was taking, her memory loss was a side effect and certainly not the intended result of the medications. Buckley's memory loss is not sufficiently related to her November 2004 leave request for cervicalgia and migraine headaches to put the employer on notice that the absence on the 13th was covered under FMLA.

Buckley also argues that HealthPartners failed to inform her of her right to ask for retroactive FMLA leave, or that her absence on July 13 was grounds for termination. However,

17

as stated above, Buckley has failed to provide sufficient evidence or create a genuine issue of material fact that she provided HealthPartners with sufficient notice that her absence on July 13 was related to her subsequent request for FMLA leave from July 18-31. HealthPartners did not fail to meet any obligation to inform Buckley of her rights under the FMLA or its regulations.

In sum, Buckley has failed to proffer sufficient evidence or create a genuine issue of material fact that HealthPartners interfered with her rights under the FMLA. Every FMLA request by Buckley was granted by HealthPartners. HealthPartners also imposed progressive discipline on Buckley for unexcused absences and failure to follow proper nursing procedure, in accordance with the union collective bargaining agreement, even though it was not required to do so. Buckley never requested FMLA leave for her July 13 absence from work, and her FMLA request for July 18-31 concerned acute adjustment reaction and anxiety, not memory loss. Even if Buckley did tell Smith and Dorfman she was experiencing memory loss or having problems with medication, Buckley's disclosure did not put HealthPartners on notice that Buckley needed FMLA leave for her absence on the 13th or that Buckley's FMLA leave on July 18-31 was related to her absence on the 13th. Because Buckley has failed to create a genuine issue of material fact, summary judgment for HealthPartners is appropriate.

HealthPartners also argues that Buckley's claim fails because she lacks evidence supporting her alleged damages. Although the Court need not address HealthPartners' damages argument in light of the finding that HealthPartners did not interfere with Buckley's FMLA rights, the damages argument will be addressed briefly here. "In an action brought under the FMLA, 'a plaintiff must be able to show a reasonable likelihood that a rational trier of fact would award damages or find an entitlement to injunctive relief to avoid the entry of summary

18

judgment.'"  McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2004)

(citation omitted).  "A party harmed by discriminatory employment decisions has an affirmative

duty to mitigate [her] damages by reasonably seeking and accepting other substantially

equivalent employment."  Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894,

904-05 (8th Cir. 2006).  "A plaintiff's efforts to mitigate need not be successful but must

represent an honest effort to find substantially equivalent work."  Mathieu v. Gopher News Co.,

273 F.3d 769, 784 (8th Cir. 2001).

From August 1, 2005, until mid-November 2005, Buckley did not apply for any jobs.

Buckley Dep. at 28-34.  Accordingly, Buckley is not entitled to recover lost wages during that

time period because she did not attempt to mitigate damages.  Buckley was ultimately re-hired

by Allied Professionals at a starting salary $1.00 higher than her salary at HealthPartners.  Id. at

38-39.  Although Buckley worked 24 hours per week at first, she now works as much as 40

hours per week, and therefore makes more money than she did while working at HealthPartners.

Id. at 39-40, Ex. 3.  As a result, any claim for past and future income loss would likely be

unsuccessful.  Although Buckley does not currently have health insurance through Allied

because she does not work sufficient hours to qualify, she has not attempted to obtain health

insurance from any other source.  Id. at 13-16, 24.  Therefore, Buckley's claim for lost health

insurance is barred by her failure to mitigate.  Finally, any claim for liquidated damages would

fail because HealthPartners did not interfere with Buckley's FMLA rights, but if it did, any

violation of the FMLA was in good faith.  See Thorson v. Gemini, Inc., 205 F.3d 370, 383-84

(8th Cir. 2000).

**IV. CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that HealthPartners, Inc.'s Motion for Summary Judgment [Docket No.

17] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 9, 2007.